## BEHRENS v. HIRONIMUS.
### No. 5765.

United States Court of Appeals
Fourth Circuit.
Nov. 8, 1948.

Wilbur V. Keegan, of Detroit, Mich. (B. F. McGinnis, of So. Charleston, W. Va., and Theodore Fernholz, of Detroit, Mich., on the brief), for appellant.

A. Garnett Thompson, Asst. U. S. Atty., of Charleston, W. Va. (Leslie E. Given, U. S. Atty., of Charleston, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

628

DOBIE, Circuit Judge.

The proceedings in this case prior to the first appeal to us are set out in our opinion in this first appeal, Behrens v. Hironimus, 4 Cir., 166 F.2d 245. These need not be repeated here.

We held, in that opinion, that plaintiff's application for habeas corpus did make out a prima facie case, the judgment of the District Court was reversed and the case was remanded to the District Court "with instructions to issue the writ of habeas corpus, hear the evidence, determine whether or not the allegations of the petition are true and for such further proceedings as the ends of justice may require."

In pursuance of our mandate, a hearing was held by the District Court, April 19, 1948, at which testimony was produced at great length. At the conclusion of this hearing, the District Court found that the petitioner Behrens had failed to prove that she was denied any of her federal constitutional rights and the petitioner Behrens was remanded to the custody of the respondent Hironimus. From this decision, petitioner has appealed.

Of the many points urged upon us by counsel for petitioner, we think only three points require discussion by us: (1) The admission of the testimony of Mrs. Merrill, a lawyer consulted by petitioner; (2) Whether petitioner competently and intelligently waived the benefit of counsel; and (3) Whether petitioner's plea of guilty, on which she was sentenced, was entered under duress and improper pressure.

■■ We think the evidence of Mrs. Merrill was clearly admissible. Article 6, Chapter 50, Section 10, Serial Section 4992, of Michie's West Virginia Code, provides: "The following persons are incompetent to testify, as hereinafter provided, and not otherwise: * * * An attorney, without his client's consent, concerning any communication made to him by his client touching the matter in which he is professionally consulted or employed, or any counsel or advice given by him to this client in a professional capacity".

See Federal Rules of Criminal Procedure, Rule 26, and Committee notes, 18 U.S.C.A. The apposite rule here seems to be correctly stated in 70 Corpus Juris, Witnesses, Section 502: "The existence of the relation of attorney and client is not a privileged communication. The privilege pertains to the subject matter, and not to the fact of the employment as attorney, and since it presupposes the relationship of attorney and client, it does not attach to the creation of that relationship. So, ordinarily, the identity of the attorney's client, or the name of the real party in interest, and the terms of the employment will not be considered as privileged matter. The client or the attorney may be permitted or compelled to testify as to the fact of his employment as attorney, or as to the fact of his having advised his client as to a certain matter, or performed certain services for the client * * *."

See, also, Woodrum v. Price, 104 W.Va. 382, 388, 140 S.E. 346; Goddard v. United States, 5 Cir., 131 F.2d 220.

There may be some doubt in this case whether Mrs. Merrill and petitioner actually sustained the relationship of attorney and client, since Mrs. Merrill refused to accept the case. But we think, if such a relationship existed, the testimony of Mrs. Merrill was admissible. The privilege here extends only to confidential communications. Mrs. Merrill gave no testimony whatever as to any confidential communications made to her by petitioner; her testimony was limited to the fact that she had been consulted by petitioner and that she had given the petitioner advice on certain subject matter. This testimony was certainly relevant and important, since petitioner strenuously contended that she acted all through the proceedings without benefit of counsel.

■■ The burden of proof that the petitioner's waiver of counsel was not competent and intelligent rests clearly upon her. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Behrens v. Hironimus, 4 Cir., 166 F.2d 245, 248. The District Court made a specific finding that petitioner "voluntarily and intelligently waived her right to counsel." There is ample evidence to support this

finding and we cannot hold that it was clearly erroneous.

The order entered by the District Court in Michigan at the time of petitioner's arraignment expressly states that she was fully informed of her right to counsel and that she waived the appointment of counsel. And the order entered at the time of her sentence also expressly states that she was then advised of her constitutional right to counsel, that she was then asked whether she desired counsel to be assigned by the court and that she replied that she did not. The order entered at the time when she changed her plea to guilty makes no reference to counsel.

The only evidence of any consequence tending to show that petitioner's waiver of counsel was not entirely voluntary and intelligent was the evidence of petitioner herself. Against this was a vast array of evidence. We have already adverted to the conference between petitioner and Mrs. Merrill, an attorney. The Babcock Memorandum (Respondent's Exhibit No. 6) disclosed there was a conference in the office of the District Attorney, between Babcock (then Assistant United States District Attorney) and Mr. Lehr (the District Attorney) and a Mr. George Kelly, an attorney, at which conference the case of petitioner was discussed. Mr. Kelly stated that he had talked with petitioner concerning his employment by her but that he wished to make some preliminary investigation before deciding whether he would take her case.

Petitioner is a mature woman, with a good education, and she could count nearly twenty years of experience as a social worker. She was frequently visited by her brother with whom she discussed the question of a lawyer. And petitioner's own testimony tends to show that one reason she had no lawyer was her brother's inability to procure counsel who was satisfactory to her and who was willing to undertake her case.

Harold Hove, an F.B.I. agent who saw petitioner a number of times, testified that she was often told of her right to counsel but that she expressed a desire not to be represented by an attorney. Testimony to like effect was given by F.B.I. agents Bugas and Dunham.

Finally, the finding of the District Judge on the question of whether improper pressure or coercion was used to induce petitioner to change her plea to guilty, is very positive and specific. This finding (No. 1) reads: "No promises, or inducements, or coercion, or duress, or fraud, or misrepresentations, or deception, of any kind, were used by any agents of the Federal Bureau of Investigation or other representatives of the United States government to induce the petitioner, Theresa Behrens, to make a confession, or any other statement, at the time of her arrest on August 24, 1943, or any time thereafter, or to induce her to change her plea of not guilty to a plea of guilty to the indictment returned against her on September 17, 1943, for a violation of Section 34, Title 50, United States Code [50 U.S.C.A.Appendix, § 34]."

This finding, too, finds ample support in the record.

Petitioner's testimony as to mistreatment by the F.B.I. agents was quite flimsy and the same is true as to either threats or promises made to her by these agents as an inducement to her plea of guilty. On all points here, she was flatly contradicted by all the F.B.I. agents, who testified that when she mentioned to them the possibility of pleading guilty, no promises of leniency or any threats were made to her, that they told her that this was a question for the District Attorney, not for them, and that, at petitioner's express request, a conference in the District Attorney's office was arranged. There was complete unanimity in the testimony on these points by F.B.I. agents Bugas, Hove, Dunham, Burns and Kirby. And the testimony of these agents was strongly confirmed by the evidence of Babcock, Assistant United States District Attorney, and Mrs. Sybil Greene, the matron present when petitioner was at the offices of the F.B.I.

The judgment of the District Court, remanding the petitioner to the custody of respondent, is affirmed.

Affirmed